# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| MICHELLE COX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 6:14-cv-01199-JHE |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Michelle Cox ("Cox") seeks review, pursuant 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of Social Security Administration ("Commissioner"), denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Cox timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record, and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Cox was forty-three years old as of that date last insured, and she has a high school education. (Tr. 14, 134, & 157). Her past relevant work includes employment as an accounts payable clerk, a retail associate, a bingo worker, and a vault clerk. (Tr. 18). Cox claims she

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

became disabled on April 1, 2011, due to mental depression, migraine headaches, and anxiety. (Tr. 153 & 433).

Cox filed her applications for a period of disability and DIB on February 23, 2011. (Tr. 12). The Commissioner initially denied Cox's application on October 4, 2011, and Cox requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*). After a hearing, the ALJ denied Cox's claim on February 1, 2013. (Tr. 12-20). Cox sought review by the Appeals Council, but it declined her request on April 24, 2014. (Tr. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. On June 23, 2014, Cox initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Cox met the insured status requirements of the Social Security Act through December 31, 2011, and that Cox had not engaged in substantial gainful activity from the alleged onset date of April 1, 2011. (Tr. 14). At Step Two, the ALJ found Cox has the following severe impairments: migraine headaches, depression, and anxiety. (*Id.*). At Step Three, the ALJ found Cox does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-15).

Before proceeding to Step Four, the ALJ determined Cox's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Cox has the RFC to perform the full range of all exertional levels. The only limitations were nonexertional: she is limited to unskilled work and should not

be exposed to anything more than occasional interaction with coworkers, supervisors, and members of the general public. (Tr. 15-18).

At Step Four, after obtaining testimony from a Vocational Expert, the ALJ determined Cox was unable to perform her past relevant work. (Tr. 18). At Step Five, the ALJ found that, through the date last insured, considering Cox's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy Cox could have performed; therefore, she was not disabled at any time between the alleged onset date and the date last insured. (Tr. 20).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Cox challenges the ALJ's decision on two grounds: (1) the ALJ failed to properly evaluate Cox's credibility under the Eleventh Circuit Pain Standard, (doc. 12 at 3-10), and (2) the ALJ failed to properly articulate good cause for according less weight to the opinion of a treating physician, (*id.* at 10-13). However, substantial evidence supports the ALJ's determination Cox failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion.

A.     **Eleventh Circuit Pain Standard**

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.*

The ALJ found Cox's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying the pain standard and establishing her testimony as sufficient to support a finding of disability.  (Tr. 16).  However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990).  The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), and substantial evidence, *see Foote*, 67 F.3d at 1561-62.

In support of his decision not to fully credit Cox's subjective pain testimony, the ALJ stated Cox's treatment for her migraines during the period between the alleged onset and the date last insured was infrequent and conservative, limited to continuing her medication and recommending a follow-up appointment Cox did not make.  (Tr. 16-17) (citing tr. 303-08).  The ALJ further noted the medical evidence was consistent with the reports of the physical and

6

psychological consultative examinations, which found, physically, she was good with normal neurological findings and, psychologically, she had normal speech, adequate concentration and attention, an intact memory, consistent fund of information, adequate abstraction, and logical and coherent thought processes, albeit with a gloomy mood, blunted affect, and poor judgment and insight. (Tr. 17) (citing tr. 257-71). The ALJ also considered Cox's extensive daily activities, finding they were inconsistent with her allegations of disabling pain, dysfunction, and mental limitations, (*id.*), and her inconsistent past work history, which he noted raised a question whether Cox's current unemployment is actually the result of her medical condition, (tr. 18). He gave Dr. Farouk Raquib's opinion little weight because it primarily addressed Cox's limitations after the date last insured, was based on limited treatment and Cox's subjective complaints instead of objective evidence. (Tr. 18).

Cox first contends the ALJ picked and chose among the medical records to support his own conclusion, relying on part of one treatment note from November 1, 2011, and "ignored the importance of the Plaintiff's report that she was having weekly migraines lasting 3-4 days." (Doc. 12 at 5) (citing tr. 307). This argument, however, is circular, relying on Cox's own subjective reports to establish the credibility of her subjective allegations. The fact a doctor noted Cox's own subjective reports of headaches does not convert those subjective reports into objective evidence supporting the subjective report. Focusing on the objective evidence for or against the claimant's subjective report is precisely the point of the credibility analysis and does not constitute cherry-picking. The ALJ noted Dr. Long only prescribed medication, no emergency or invasive treatment was necessary during the relevant time period, and Cox did not return for the recommended follow-up. (Tr. 16-17). (*See also* tr. 307, 317-20, & 323-24).

7

On a similar note, Cox asserts that, contrary to the ALJ's finding, the evidence of Dr. Raquib's treatment after the last date insured "is probative of the Plaintiff's condition as it documents her continued treatment for her severe debilitating migraine headaches." (Doc. 12 at 6). She notes she began seeing Dr. Raquib regularly starting in January 2012, complaining of daily headaches, and, in June, July, and August 2012, received injections for them. (*Id.* at 6). Cox does not explain how an increase in treatment after 2012 is indicative of debilitating migraines before December 31, 2011. In fact, an increase in the conservative treatment being received before January 30, 2012, is more indicative of an increase in the severity of the condition *after* the date last insured than it is of long-term debilitating migraines that were, for the entire time Cox met the insured status requirements, simply receiving more limited treatment. (Tr. 364-67). It is at least equally indicative of the two inferences, which hardly supports Cox's contention the ALJ's determination is not supported by substantial evidence.

Next, Cox cites *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), for the proposition participation in everyday activities does not disqualify a claimant from disability. (Doc. 12 at 7) (also quoting *Smith v. Califano*, 637 F.2d 968, 971-72 (3rd Cir. 1981), for a similar proposition). While this may be true, the ALJ was not determining disability but considering the evidence of Cox's daily activities to the extent it contradicted her subjective testimony on the severity of her pain and thereby undermined her credibility. In *Lewis*, the ALJ had rejected the recommendations of treating physicians, in part, because of evidence of daily activities, and the court held that daily activities were not dispositive of disability and found, on the facts of that case, the evidence of daily activities was not "inconsistent with the limitations recommended by [the plaintiff]'s treating physicians." 125 F.3d at 1441. Nothing in *Lewis* prevents an ALJ from relying on daily activities to the extent they are inconsistent with other

evidence. *See also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process.").

Cox also asserts the ALJ's description of her daily activities was misleading because the evidence shows her more limited than the ALJ's opinion implies. (Doc. 12 at 7-8). The ALJ's opinion, however, merely lays out the various activities Cox, her ex-husband, and her physicians have said she can do and states these are inconsistent with Cox's allegations of disabling pain, dysfunction, and mental limitations. (Tr. 17). Although there are statements in the underlying evidence indicating limitations on those activities, there is sufficient evidence to adequately support the ALJ's conclusion that Cox's admitted wide-ranging activities are inconsistent with the level of disabling pain she alleges.

Along similar lines, Cox argues the ALJ's reference to her sporadic work history as raising questions about whether her current unemployment is actually the result of her medical condition is an unsubstantiated, "irrational assumption." (Doc. 12 at 8-9). Cox cites to no authority for the proposition the ALJ may not make the inference her sporadic work history (during times she does not allege she was disabled) indicates other, non-disability reasons for her failure to work. (*See* doc. 12 at 8-9). To the contrary, "the ALJ is entitled to consider a claimant's work history and a sporadic history may reflect unfavorably on a claimant." *Bryant v. Comm'r of Soc. Sec.*, No. 6:14-CV-534-ORL-37, 2015 WL 2169149, at *8 (M.D. Fla. May 8, 2015). *Accord Warbington v. Colvin*, No. CIV.A. 13-00119-N, 2013 WL 6627015, at *5 (S.D. Ala. Dec. 17, 2013) (listing "sporadic work history prior to the alleged disability onset date, which raises a question as to whether her continued unemployment is actually due to medical impairments" as part of clearly articulated and adequate reasons for discrediting the plaintiff's

allegations of disabling symptoms (internal quotation marks omitted)). *Cf. Huddleston v. Comm'r of Soc. Sec.*, No. 6:12-CV-1273-ORL-DAB, 2013 WL 3581539, at *12 (M.D. Fla. July 11, 2013) (instructing the ALJ on remand not to consider work history evidence in the light of physician testimony the treatment the plaintiff had been prescribed during that time was possibly ineffective).

Instead, Cox's support for her argument is to point to evidence of migraines going back to 1999 and to assert "[t]he ALJ failed to consider the high probability the Plaintiff was unable to perform work on a sustained basis due to her health conditions which are documented at that time." (*Id.* at 9). However, this argument is essentially that Cox was disabled during the various times she was not working despite alleging her medical conditions rendered her unable to work in April of 2011. (Tr. 134 & 153). She cites to no evidence that the treatment during that time was not sufficient and that she was, in fact, disabled. On the contrary, in August of 1999, treatment records show medication helped her headaches, which had not worsened despite a tragedy in her family. (Tr. 226). A subsequent, extreme headache resolved under medication with no "symptoms suggestive of complicated migraine headaches." (Tr. 224-25). Similarly, the treatment by Dr. Raquib at the Winfield Clinic in 2008 shows she was being treated primarily for anxiety and that the medication for her anxiety was "helping somewhat" and her migraines were "stable." (Tr. 236-37). Moreover, despite this relatively successful treatment, that treatment record states she had been unemployed since March 2007 when the company she had been working for had gone under. (Tr. 237). The ALJ's conclusion Cox's work history undermined her credibility was not unsupported by the evidence.

In sum, the ALJ's decision not to credit Cox's subjective testimony is supported by substantial evidence.

B.     **Consideration of Impairments' Combined Effects**

Cox also contends the ALJ did not properly consider the combined effects of her multiple impairments. (Doc. 12 at 9-10). It is true that, "an ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)). However, Cox's support for her assertion the ALJ did not consider the combined effects of her impairments is simply to set out the evidence in support of those other impairments, much of which is after the last date insured. (Doc. 12 at 9-10). The evidence from after the date last insured could just as easily show deterioration in her condition over the month and a half between the date last insured and the beginning of her subsequent treatment. (Tr. 329). Not considering it does not show a failure to consider the impairments in combination.

The only evidence Cox cites from the relevant time period is Dr. Davis's consultative evaluation, specifically the diagnoses of depression and anxiety and the opinion Cox was limited in ability to respond appropriately to co-workers and supervisors. (Doc. 12 at 9). First, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Second, the ALJ explicitly took into account the portion of Dr. Davis's examination report Cox cites, giving "great weight to the opinion of Dr. Davis, the consultative psychologist, who opined that [Cox]'s ability to respond appropriately to coworkers and supervisors was quite limited and that [her] ability to carry out instructions may be impaired as well." (Tr. 18).

The ALJ made specific and well-articulated findings of what effect the impairments would have in combination, finding no exertional limitations because all of Cox's impairments were mental or psychological and basing the nonexertional limitations on the overall vocational factor assessments of the state agency and Dr. Davis. (*Id.*).

### C. Treating Physician's Opinion

A treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to give a treating physician's opinion something less than substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Additionally, opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative

12

findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Here, the ALJ had good cause to discount Dr. Raquib's opinion. First, the ALJ noted Dr. Raquib's assessment, made after the date last insured, described Cox's limitations "during a period that [was] not relevant to [the ALJ's] decision." (Tr. 18). The ALJ also pointed out Dr. Raquib's opinion was based on a limited amount of evaluation time and primarily based on the claimant's subjective complaint as opposed to objective findings. (*Id.*). Further, the opinion's ultimate conclusion that Dr. Raquib does not believe Cox will be able to hold any meaningful employment and supports her fully for permanent disability, (tr. 379), are not "medical opinions" and are not due any special consideration. *See* 20 C.F.R. § 404.1527(d).

Cox raises two issues with the ALJ's conclusion. First, although Cox acknowledges the ALJ's statement Dr. Raquib's opinion describes her limitations during a period after the date last insured, she merely argues the 2012 treatment (with a quick reference to a brief treatment in 2008) supports Dr. Raquib's opinion she is unable to maintain meaningful employment. (Doc. 12 at 11-12). Although Dr. Raquib treated Cox in 2008, that treatment was primarily for anxiety, and the records show the medication for her anxiety was "helping somewhat" and her migraines were "stable." (Tr. 236-37). Then, there is no record of treatment with Dr. Raquib until 2012, after the date last insured. Cox has pointed to roughly six monthly evaluations between January

13

27, 2012, and June 19, 2012, (tr. 343-67), and a total of seven evaluations over four-and-a-half years, (tr. 237), that Dr. Raquib had treated her by the time of his opinion. (Doc. 12 at 14). The fact Dr. Raquib treated her briefly in 2008 and then on a regular basis starting in 2012 does not extend the time he was a treating physician back through 2008, and the ALJ did not improperly discount his opinion as based on limited evaluation and, more importantly, occurring mostly after the relevant time period. Despite Cox's contrary assertion the ALJ's finding is not supported by the evidence, the record supports a conclusion the long-diagnosed migraines did not become disabling until after the date last insured and Dr. Raquib's opinion, written on July 19, 2012, and describing her then current condition and prognosis, does not contradict that conclusion.

Similarly, Cox contends that, because the medical evidence supports Dr. Raquib's opinion, the ALJ was "playing doctor" when he said the alleged intensity and duration of the migraine headaches could not be objectively demonstrated. (Doc. 12 at 12). She then proceeds to cite only evidence from 2012. (*Id.*) (citing tr. 343-67, 399, & 400). Whether Cox was disabled in 2012, however, is mostly irrelevant to the determination whether she was disabled between April 1, 2011, and December 31, 2011. At best, the cited evidence is consistent with the possibility her conditions were disabling in 2011 and she merely waited until late January 2012 to seek regular treatment, but it also strongly supports the conclusion her condition worsened and did not become disabling until 2012. It was not irrational for the ALJ, as fact-finder, to disregard that evidence in the context of the wider record when considering whether she was disabled between April 1, 2011, and December 31, 2011. The ALJ's decision to give little weight to Dr. Raquib's July 2012 opinion is supported by substantial evidence.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Cox's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 23rd day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE